IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jason Holbrook,                                    Case No. 3:12CV484

           Plaintiff

          v.                                         **ORDER**

Louisiana-Pacific Corp.,

           Defendant

       This is a suit by a homeowner against the maker of TrimBoard, a manufactured wood product that the home's builder purchased and installed on the home's exterior.

       Plaintiff Jason Holbrook contends the manufacturer, defendant Louisiana-Pacific Corporation, breached the product's warranty when it refused to compensate him for all the TrimBoard that, due to an alleged manufacturing defect, became damaged and degraded. Holbrook also contends a warranty provision limiting the company's liability to replacement costs is unconscionable and fails of its essential purpose.

       Pending is Louisiana-Pacific's motion for summary judgment. (Doc. 56). For the reasons that follow, I grant the motion in part and deny it in part.

**Background**

In 2003, Holbrook contracted for construction of a single-family home in Maumee, Ohio. In December, 2003, the builder installed 1,580 linear feet of TrimBoard on the home.

Louisiana-Pacific warrants its TrimBoard's substrate for ten years "against declamation, checking, splitting, cracking and chipping," provided that "the trim is properly stored, installed, maintained, and protected as specified" in the accompanying instructions. (Doc. 29-1 at 1). The warranty limits the company's liability to the cost of "repair[ing] and replac[ing] the affected trim [but] no more than twice the original purchase price of the affected trim." (*Id.*). The warranty also provides the company is not liable for consequential damages.

In 2008, Holbrook discovered problems with his TrimBoard. He identified "[e]xpansion of baseboards around the posts of [his] front porch" and "cracking at the bottom edges of the corner trim boards." (Doc. 65-1 at 2, 3). Holbrook tried to remedy the situation by removing some of the affected TrimBoard and replacing it with PVC trim, only to discover additional segments of degraded TrimBoard.

In August, 2011, Holbrook submitted a claim to Louisiana-Pacific that stated "100%" of the trim on the front, left, and right sides of his home was damaged. (Doc. 65-6 at 3). Holbrook claimed the trim on the back of his home "seems OK except for [the] ends . . . that have rotted away." (*Id.*).

The company sent Vernon Tilley, an inspector, to evaluate Holbrook's claim.

Tilley determined that 847 linear feet of TrimBoard showed signs of damage. He first identified 206 linear feet of TrimBoard that "had been installed according to [Louisiana-Pacific's] instructions but was not performing as expected" – and thus was compensable under the warranty. (Doc. 56-4 at 3). But Tilley then concluded the home's builder had improperly installed the

remaining 641 linear feet of damaged trim – and thus that Louisiana-Pacific was not obligated to compensate Holbrook for that trim.

Tilley's estimate of the damaged trim differed from Holbrook's estimate. According to Holbrook, only "a small percentage [of trim] was not in a form of deterioration at the time that I filed the claim." (Doc. 65-1 at 18).

Moreover, Tilley acknowledged that he relied on the company's 2004 installation instructions in deciding which portions of damaged trim the builder had improperly installed. Tilley explained Louisiana-Pacific had issued installation instructions in 2000, but had made "significant changes" to those instructions in February, 2004 – after the installation of Holbrook's trim. Tilley agreed that, had he evaluated Holbrook's claim under the 2000 instructions, the company may have been obligated to compensate Holbrook for an additional 261 linear feet of damaged TrimBoard.

After Tilley completed his evaluation and reported back to Louisiana-Pacific, the company engaged R.S. Means, an independent construction-cost estimator, to prepare an offer that would, in its view, resolve Holbrook's claim.

Using the R.S. Means calculation, Louisiana-Pacific offered Holbrook $1,830.53, to cover: 1) labor to remove and dispose of the existing TrimBoard; 2) labor to install, caulk, and paint the new trim; and 3) the contractor's overhead and profit. According to R.S. Means, the estimated purchase price of 206 linear feet of TrimBoard was $277.11. Louisiana-Pacific's offer therefore exceeded the amount it considered due under the warranty: $554.22, or twice the purchase price.

Holbrook rejected the offer, having determined his actual replacement costs were between $30,000 and $32,000. He then sued Louisiana-Pacific for breach of express and implied warranties,

3

defective manufacture and design, negligence, and violations of the Ohio Products Liability Act and Ohio Deceptive Trade Practices Act.

I granted Louisiana-Pacific's motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Holbrook v. Louisiana-Pac. Corp.*, 2012 WL 3801725 (N.D. Ohio). The Sixth Circuit affirmed dismissal of the majority of Holbrook's claims, but reversed as to his claim for breach of express warranty. *Holbrook v. Louisiana-Pac. Corp.*, 533 F. App'x 493 (6th Cir. 2013).

After Holbrook responded to the motion for summary judgment, the company re-examined his claim in light of the evidence showing Tilley had relied on instructions post-dating the installation of Holbrook's TrimBoard.

In doing so, it identified 261 additional linear feet of damaged TrimBoard "that may have been covered under the 2000 Application Instructions." (Doc. 70 at 10). It also uncovered a "clerical error" in Tilley's report that, when corrected "result[ed] in an additional 88 linear feet of compensable TrimBoard." (*Id.* at 10 n.3).

Again using the R.S. Means calculation, Louisiana-Pacific offered Holbrook $4,219.98 to resolve his claim. To date, Holbrook has not accepted the offer.

**Analysis**

Summary judgment is appropriate under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 250 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

I accept the non-movant's evidence as true and construe all evidence in its favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).

### A. Whether Louisiana-Pacific Breached the Warranty

"[T]o prevail on a breach of express warranty claim, the plaintiff must show that: (1) an express warranty exists; (2) the product under warranty is defective; (3) the plaintiff provided the defendant with reasonable notice of the defect; and (4) the plaintiff suffered an injury as a result of the defect." *Thompson I.G. v. Edgetech I.G. Inc.*, 590 F. App'x 532, 537 (6th Cir. 2014).

Here, Holbrook's evidence suffices for a reasonable jury to find Louisiana-Pacific breached the express warranty.

First, it is undisputed that: a) a warranty exists; b) at least some of the properly installed TrimBoard on Holbrook's home decayed within the ten-year warranty period; and c) Holbrook made a written claim.

Second, Holbrook has introduced evidence showing the company evaluated his claim under the 2004 installation instructions, which were, according to Louisiana-Pacific's own inspector, "significant[ly]" more restrictive than the pre-2000 instructions. Indeed, Tilley acknowledged that his reliance on those instructions led him to exclude 261 linear feet of damaged TrimBoard that may have been compensable under the warranty.

Viewed in the light most favorable to Holbrook, this evidence would permit the jury to find Louisiana-Pacific breached the warranty by refusing to compensate Holbrook for defective TrimBoard that was compensable under the company's then-applicable installation instructions.

Third, Holbrook's testimony that nearly all the TrimBoard on his home was damaged conflicts with Tilley's determination that 733 linear feet of TrimBoard – or roughly forty-six percent of the trim on Holbrook's home – was undamaged. If credited, this testimony would support a jury finding that Louisiana-Pacific's rejection of Holbrook's entire claim further breached its warranty.

Louisiana-Pacific contends the warranty would not have covered certain segments of damaged TrimBoard, regardless of which set of instructions Tilley consulted.

But its evidence on this score is insufficient to show, as a matter of law, that it justifiably relied on Tilley conclusions as to either the allegedly undamaged 733 linear feet or the damaged but allegedly improperly installed 641 linear feet. Indeed, neither Louisiana-Pacific's moving papers nor Tilley's affidavits provide a detailed explanation for how or why Tilley determined these sections of trim were undamaged or improperly installed.[1]

Finally, the company contends no reasonable jury could find it breached the warranty, given that it offered Holbrook $4,219.98 to resolve his claim – an amount that exceeds, by more than $1,100, the greatest amount he could, the company contends, recover under the warranty.[2]

---

[1] Louisiana-Pacific contends Holbrook now seeks to recover for damaged TrimBoard not encompassed by his original claim. It points to Holbrook's deposition testimony that, at the time of the deposition, essentially all the trim on his house had decayed or cracked, including the small portion of trim that was undamaged when he made his claim. Whether Holbrook is seeking to expand his claim is a factual issue I cannot resolve on summary judgment. But I agree that, to the extent Holbrook is seeking to recover for more damaged trim than he originally claimed, he has presented no evidence he submitted a revised claim within the warranty period. Accordingly, Holbrook's failure to give timely written notice limits any recovery to damaged TrimBoard covered by his original claim. *St. Clair v. Kroger Co.*, 581 F. Supp. 2d 896, 902-03 (N.D. Ohio 2008).

[2] When Louisiana-Pacific revised its offer, the replacement cost of TrimBoard was approximately $0.98 per linear foot. (Doc. 70-2 at 7). Accordingly, Holbrook's maximum recovery under the warranty would appear to be twice the purchase price ($1.96) for 1,580 linear feet of TrimBoard, about $3,096.80

This argument lacks merits because, as I explain below, there is a genuine dispute of material fact as to whether the warranty failed of its essential purpose. Were a jury to so find, Holbrook would not be limited to recovering twice the purchase price of the replacement TrimBoard; he could also recover consequential damages. *Goddard v. Gen. Mtrs. Corp.*, 60 Ohio St. 2d 41, 47-48 (1979) (if warranty fails of its essential purpose, buyer may recover consequential damages, even if warranty purports to exclude such damages).

For these reasons, I deny Louisiana-Pacific's motion for summary judgment on Holbrook's claim for beach of express warranty.

### B. Unconscionability

Holbrook contends the warranty's provision limiting Louisiana-Pacific's liability to twice the purchase price of defective trim is unconscionable and unenforceable. (Doc. 54 at 15-17).

Louisiana-Pacific asserts it is entitled to summary judgment on Holbrook's unconscionability claim for two reasons.

First, it argues Holbrook may not challenge the warranty as unconscionable because he is only a third-party beneficiary of the original contract. The company asserts that, because Holbrook seeks to obtain the benefits of the warranty, he must also accept its burdens. Second, according to Louisiana-Pacific, there is no evidence the limited-damages provision is procedurally or substantively unconscionable.

### 1. Holbrook Can Assert Unconscionability

There is no merit to the company's claim that a third-party beneficiary may not challenge as unconscionable a provision in the contract giving him rights as an intended third-party beneficiary.

7

Unconscionability is an affirmative defense to a contractual obligation, *Deutsche Bank Nat'l Trust Co. v. Pevarski*, 187 Ohio App. 3d 455, 466 (2010), that both an original party and a third-party beneficiary can assert. *CitiMortgage, Inc. v. Carpenter*, 2012-Ohio-1428, ¶15 ("[A] party seeking to assert an affirmative defense under a contract must either be a party to the contract or an intended third-party beneficiary of a contract[.]"); *see also Ohio Sav. Bank v. H.L. Vokes Co.*, 54 Ohio App. 3d 68, 73 (1989) (considering third-party beneficiary's claim that warranty disclaimer was unconscionable, but rejecting defense where underlying contract was between merchants).

Of course, as Louisiana-Pacific correctly points out, a party who accepts the benefits of a contract may not evade the burdens the contract imposes. But that proposition would have force here only if the challenged provision neither is unconscionable nor fails of its essential purpose, the questions to which I now turn.

**2. The Limited-Remedies Provision Is Not Unconscionable**

"Under Ohio law, the seller may legitimately limit the buyer's remedies to repair [or replacement] of the defective product[.]" *Zaremba v. Marvin Lumber & Cedar Co.*, 458 F. Supp. 2d 545, 549 (N.D. Ohio 2006); *see* O.R.C. § 1302.93(A)(1) (permissible to limit buyer's damages to repair and replacement of nonconforming goods); O.R.C. § 1392.03(C) (permissible to exclude buyer's right to recover consequential damages).

This type of "warranty limitation or disclaimer will be upheld as long as it is not unconscionable." *Zaremba*, *supra*, 458 F. Supp. 2d at 549.

"Unconscionability includes both an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Hayes v. Oakridge Homes*, 122 Ohio St. 3d 63, 67 (2009). Procedural unconscionability "refers to

8

circumstances (e.g. coercive behavior on the part of one of the parties) disrupting fair bargaining conditions; the latter pertains to commercially unreasonable contract terms." *Cook v. Home Depot U.S.A., Inc.*, 2007 WL 710220, *6 (S.D. Ohio).

Holbrook has introduced no evidence that would permit a jury to find the provision limiting Louisiana-Pacific's liability to twice the purchase price of TrimBoard is procedurally unconscionable. Indeed, Holbrook has entirely failed to respond to the company's contention that he has no such evidence.

In any event, "findings of unconscionability in a commercial setting are rare." *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St. 3d 40, 55 (1989). This is not one of the rare cases.

Louisiana-Pacific has introduced uncontroverted evidence that sophisticated commercial entities – it and its distributors – negotiated the contract containing the limited warranty. Given Holbrook's failure to address this issue, there is no evidence that these negotiations were anything but arm's-length. *Ohio Univ. Bd. of Trs. v. Smith*, 132 Ohio App. 3d 211, 220 (1999) (rejecting unconscionability claims where "parties appear to have dealt with each other at arm's length and there is no evidence of coercion or duress").

It stands to reason, moreover, that had the distributor (or Holbrook's builder) considered the limited warranty unsatisfactory, other similar and suitable products, potentially with more favorable warranty terms, were available from other manufacturers.

Finally, the limited warranty, printed in the same type size as the rest of the warrant, was not ambiguous or convoluted, or otherwise disguised in its import. *See id.* ("The damages clause is printed on the contract in the same print size as the other clauses; it is legible and in plain English.").

Holbrook has offered no evidence on which a reasonable jury could base a finding of procedural unconscionability. Accordingly, he cannot, on the basis of putative unconscionability, make an end around the warranty's limited-remedies provision.

### C. Whether the Limited Warranty Failed of Its Essential Purpose

Finally, Holbrook contends that, even if the limited warranty is not unconscionable, it failed of its essential purpose. This argument hinges on his testimony that repairing and replacing all the defective TrimBoard would cost him between $30,000 and $32,000. For this reason, Holbrook contends, the warranty's provision capping his damages at twice the purchase price of new TrimBoard is unenforceable.[3]

Although parties to a contract may limit remedies and damages, those limitations may be invalid if "circumstances cause an exclusive or limited remedy to fail of its essential purpose." O.R.C. § 1302.93(C). This is because "it is of the very essence of a sales contract that at least minimum adequate remedies be available." Uniform Commercial Code § 2-719, cmt. 1.

"A limited remedy fails of its essential purpose when the aggrieved party cannot obtain the intended benefit of the remedy for which it bargained." *Nat'l Mulch & Seed, Inc. v. Rexius Forest By-Prods., Inc.*, 2007 WL 894833, *29 (S.D. Ohio).

"This frequently occurs in the situation where the parties agree that the buyer's only remedy for the seller's breach of warranty is repair or replacement of the goods sold." *Id.* "This type of

---

[3] At the outset, I reject Louisiana-Pacific's argument that I should not consider Holbrook's testimony regarding his estimated damages because it is "self-serving." (Doc. 70 at 13). That is no basis to discount this evidence, as ["d]eposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving." *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013). "[I] may not disregard [Holbrook's deposition testimony] merely because it serves [his] interests[.]" *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 (6th Cir. 2010).

limited remedy typically fails when evidence shows that the seller either refuses to repair or replace the goods or, despite attempting repair, the seller was not able to cure its breach." *Id.*; *see also Chemtrol*, *supra*, 42 Ohio St. 3d at 55 (limited remedy fails if "seller is unable or unwilling to make repairs within a reasonable time").

Here, as Louisiana-Pacific correctly notes, there is no evidence it either refused to fulfill, or was unable to fulfill, its obligations under the warranty.

On the contrary, the company sent Tilley to evaluate Holbrook's claim less than two months after Holbrook submitted a claim. Tilley inspected the TrimBoard and determined how much damaged trim the company's warranty covered, and Louisiana-Pacific promptly offered to compensate Holbrook for the damaged trim. Furthermore, when Louisiana-Pacific learned of Holbrook's accurate contention that Tilley had improperly rested his original calculations on the more restrictive 2004 instructions, the company increased its offer to $4,219.98.

Notwithstanding all that, Ohio law does necessarily foreclose Holbrook from proving that the warranty still failed of its essential purpose. This is so because a jury could find the warranty covers only a fraction of Holbrook's allegedly substantial – and foreseeable – economic hardship.

For example, in *Daniel A. Terrieri & Sons, Inc. v. Alliance Wall Corp.*, 1996 WL 148596, *6 (Ohio App.), the Ohio Court of Appeals held a warranty limited to replacing defective goods failed of its essential purpose because the warranty "would not be adequate to cover [the buyer's] actual damages and enable it to receive the benefit of its bargain[.]"

In that case a contractor had purchased laminated wall panels for renovating a school. *Id.*, at *1. Within months after installation, the panels became delaminated, and the contractor incurred costs for, *inter alia*, removing the panels, hauling them away, and replacing them with new panels.

11

*Id.*, at *6. When the contractor sued the panel manufacturer, the manufacturer defended on the ground that the panel's warranty limited its liability to replacement panels. *Id.*, at *5.

Affirming the trial court's ruling that this warranty failed of its essential purpose, the appellate court stated:

> [A] limitation of remedy fails of its essential purpose if it deprives the purchaser of the substantial value of its bargain. The latent character of the defect in the panels did not allow said defect to be discovered upon tender of delivery nor prior to installation of such panels.
>
> Appellee's damages include panel removal, hauling fees, panel replacement, aluminum replacement, miscellaneous sealer, testing and inspection charges and labor charges. Therefore, the mere supplying of replacement panels would not be adequate to cover appellee's actual damages and enable it to receive the benefit of its bargain herein.

*Id.*, at *5-*6.

The contractor's theory in *Terrieri & Sons* matches Holbrook's theory here.

Like the defective supplier of panels that case, Louisiana-Pacific gave Holbrook (as the intended third-party beneficiary) an express warranty regarding the TrimBoard's future performance. But Louisiana-Pacific tried to limit Holbrook's damages to twice the purchase price, thereby trying to avoid what it would cost to rip out and install new trim.

Buying new trim is the least of what Holbrook must spend to enjoy the benefit of his warranty. Simply dumping new TrimBoard in his yard and telling him to take it from there ignores what it foreseeably and necessarily will cost to do so. Under these circumstances a reasonable jury could find that the warranty failed of its essential purpose.

Moreover, there is substantial support for this view in cases applying other states' versions of U.C.C. § 2-719(3). *See, e.g., Viking Yacht Co., Inc. v. Composite One L.L.C.*, 385 F. App'x 195, 208 (3d Cir. 2010) (warranty limiting seller's liability to purchase price of gel used to coat yachts

12

failed of its essential purpose where, after buyer "had used the gel coat on the yachts and the gel coat cracked, the cost of the gel . . . was dwarfed by the cost of repairing the ships"); *Leprino v. Intermountain Brick Co.*, 759 P.2d 835, 837 (Colo. App. 1988) ("limiting plaintiffs' damages to the cost of the bricks," as provided in applicable warranty, "would deprive plaintiffs of the substantial value of their bargain," given that bricks did not become defective until after bricks were installed and came into contact with water); *Marvin Lumber & Cedar Co. v. Sepa Extrusions, Inc.*, 964 F. Supp. 2d 993, 1003 (D. Minn. 2013) ("because the . . . warranty was for the [goods'] future performance, the damages recoverable by Marvin must remedy a failure of that future performance and not just refund the money spent for a product") (internal quotation marks omitted); *BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Spacekey Components, Inc.*, 2013 WL 149656, *4 (D.N.H.) (endorsing rule that limited return-or-refund warranties fail of their essential purposes where defects "were only discovered after the defective product was either integrated into something else or was otherwise put to use in a way that rendered it non-returnable").

Holbrook's evidence, in light of the case law in Ohio and elsewhere, creates a genuine dispute of material fact as to whether Louisiana-Pacific's warranty failed of its essential purpose. Accordingly, summary judgment is not appropriate with regard to this aspect of Holbrook's claim.

## Conclusion

A reasonable jury could find both that Louisiana-Pacific breached the TrimBoard's express warranty, and that the warranty's limited-damages provision failed of its essential purpose. But no reasonable jury could find the limited-damages provision is unconscionable.

It is, therefore

13

ORDERED THAT defendant's motion for summary judgment (Doc. 56) be, and the same hereby is granted in part and denied in part.

The Clerk shall forthwith schedule a status conference.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge